N THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KAREN BATES,<br><br>    Plaintiff,<br><br>    v.<br><br><br><br>THE CITY OF CHICAGO<br><br>    Defendant. | Case No: 18-cv-0965<br><br>Judge John Robert Blakey<br><br>Magistrate Judge Jeffrey T. Gilbert |

## AMENDED COMPLAINT

NOW COMES the Plaintiff, Karen Bates (hereinafter "Plaintiff"), by and through her attorney, Blake Horwitz, Esq., of The Blake Horwitz Law Firm, LTD., complaining of The City of Chicago and states as follows:

### JURISDICTION

1. The action is brought pursuant to 42 U.S.C. § 2000e..

2. The jurisdiction of the court is invoked pursuant to 28 U.S.C. §1331 and §1367.

3. Venue is appropriate in this Court, pursuant to 28 U.S.C. §1391(b), because events alleged in this Complaint took place in this District.

### PARTIES

3. Plaintiff is a resident of the State of Illinois and the United States.

4. At all relevant times, Plaintiff was an employee of the City of Chicago Department of Planning and Development (hereinafter "Department of Planning and Development").

5. At all relevant times, Peter Strazzabosco (hereinafter "Strazzabosco") was Plaintiff's supervisor.

1

6. When Plaintiff was terminated , the commissioner of the Department of Planning and Development was Andrew Mooney.

7. At all relevant times, Amy Henry was the Department of Planning and Development Director of Human Resources.

8. At all relevant times, the Defendant City of Chicago was subject to Title VII of the Civil Rights Act of 1964.

9. At all relevant times, Defendant City of Chicago was subject to the FMLA.

10. At all relevant times, Plaintiff had a valid expectation of continued employment with the Defendant City of Chicago.

11. At all relevant times, the employees mentioned within this Amended Complaint were acting in the course of their scope of employment, by ordinance and/or regulation of Defendant City of Chicago.

12. At all relevant times, the Defendant City of Chicago condoned, approved of, and/or turned a blind eye to Plaintiff's co-workers and supervisors conduct described more specifically in this Complaint.

## PROCEDURAL HISTORY

13. On December 10, 2014, Plaintiff filed a Complaint with the City of Chicago Department of Human Resources: Diversity and Equal Opportunity Division, alleging discrimination and/or retaliation based on race, sex, and FMLA leave.

14. On or about December 31, 2014, Plaintiff filed a charge of discrimination based on sex and race with the Equal Employment Opportunity Commission (hereinafter "EEOC").

15. Plaintiff was fired by the Defendant City of Chicago on June 24, 2015.

16. On April 15, 2016, Plaintiff filed a second charge of discrimination against Defendant City of Chicago with the Illinois Department of Human Rights.

17. The Illinois Department of Human Rights is a state agency that enforces a law that prohibits discrimination on the same basis as Title VII.

18. The charge was filed within 300 days of Defendant City of Chicago's last act of discrimination against the Plaintiff.

19. On November 20, 2017, Plaintiff received a right to sue letter from the EEOC.

20. Pursuant to the letter, Plaintiff filed her Complaint with this court on February 6, 2018.

## FACTS

21. Plaintiff is an African-American female.

22. Plaintiff began her employment with Defendant City of Chicago in 1997.

23. In 2002, Plaintiff's mother was diagnosed with Huntington's Disease.

24. In 2002, Plaintiff took over legal, financial, and domestic care of her mother.

25. In 2006, Plaintiff was hired as the Director of News Affairs for Defendant City of Chicago's Department of Planning and Development.

26. On information and belief, when Plaintiff was hired as the Director of News for Defendant City of Chicago's Department of Planning and Development approximately 25% of the news directors for the city are African American.

27. In 2011, Plaintiff was demoted to Freedom of Information Act Officer (hereinafter "FOIA Officer").

28. Plaintiff was stripped of responsibilities that she had under the title of Director of News Affairs.

29. Plaintiff was demoted at a staff meeting in front of her co-workers.

30. During Plaintiff's employment, no other similarly situated male and/or non-black employees were demoted at a staff meeting in front of co-workers.

31. At the time, Plaintiff's salary was approximately $90,000 a year.

32. Plaintiff's salary remained the same.

33. Plaintiff was replaced by Strazzabosco.

34. Strazzabosco is a white male.

35. On information and belief, Strazzabosco was given a salary of approximately $130,000.

36. Plaintiff's demotion was pretext to justify her eventual termination.

37. In 2011, Strazzabosco became Plaintiff's supervisor.

38. In December of 2012, Strazzabosco reprimanded Plaintiff for "ongoing unprofessional and disruptive behavior."

39. In December of 2012, Strazzabosco sent a memorandum to Human Resources Representative Amy Henry that included the following accusations: Plaintiff was loud and disruptive, Plaintiff engaged in idle chit-chat, Plaintiff discussed personal problems with co-workers, and that Plaintiff underscored her statements with physical gestures that caused distractions.

40. These accusations were false.

41. During Plaintiff's employment, Strazzabosco did not make false accusations similarly situated employees who were non-black and/or male.

42. In March of 2014, Strazzabosco reprimanded Plaintiff for "ongoing unacceptable behavior and work performance."

43. In March of 2014, Strazzabosco sent a memorandum to Amy Henry that included the following accusations: Plaintiff missed a deadline for filing a FOIA request; that on February 21,

2014, Plaintiff "neck-rolled"[1] at Strazzabosco; that attorneys from Defendant City of Chicago's legal department had complained about Plaintiff; and that attorneys from the Defendant City of Chicago's legal department said that Plaintiff was too emotional and angry to work with.

44. The accusation that Plaintiff "neck-rolled" at Strazzabosco was false.

45. The accusation that attorneys from the Defendant City of Chicago's legal department complained about Plaintiff was false.

46. The accusation that attorneys from the Defendant City of Chicago legal department could not work with plaintiff because she was too emotional and angry was false.

47. On March 7, 2014 Plaintiff was told by Strazzabosco to be in his office at 5:00 PM.

48. Plaintiff arrived in Strazzabosco's office and he screamed "sit down" at her.

49. On March 7, 2014, Strazzabosco asked Plaintiff if she knew she was lucky to have a job.

50. On March 7, 2014, Strazzabosco accused Plaintiff of never getting any work done.

51. This accusation was false.

52. On March 7, 2014, accused Plaintiff of alienating fellow department workers.

53. This accusation was false.

54. On March 7, 2014, Strazzabosco accused Plaintiff of consistently being late on Freedom of Information Act requests.

55. This accusation was false.

56. Strazzabsosco did not scream at or falsely accuse similarly situated employees who were non-black and?or male in disciplinary discussions.

---

[1] A "neck-roll" is an exaggerated gesture of the head used to caricaturize and stereotype African-American women. Marjaorie H. Goodwin & H. Samy Alim, *Whatever: (Neck Roll, Eye Roll, and Teeth Suck): The Situated Coproduction of Social Categories and Identities Through Stancetaking and Transmodal Stylization*, 20 J. of Linguistic Anthropology, 179, 184 (2010).

57. On March 7, 2014, Plaintiff was suspended for seven work-days because of the above mentioned incident.

58. Near the end of September of 2014, Plaintiff took FMLA leave because her mother had a stroke.

59. Plaintiff returned to work on November 12, 2014.

60. When Plaintiff returned, Strazzabosco began to micro-manage Plaintiff.

61. Strazzabosco would bombard Plaintiff with emails inquiring about her work.

62. No other similarly situated employee who was non-black and/or white was expected to constantly update Strazzabosco regarding their work.

63. In late November of 2014, Plaintiff requested to take Mondays off to care for her mother.

64. Plaintiff's request was granted, and the days she took off were counted toward her FMLA leave.

65. From December of 2014 to Plaintiff's termination, Strazzabosco accused Plaintiff of not performing her duties at work.

66. This accusation was false.

67. In emails Strazzabosco referred to Plaintiff as inept and immature.

68. These accusations were false, and Strazzabosco did not disparage similarly situated employees in work related emails who were non-black and/or white.

69. In April of 2015, Plaintiff had a performance expectations meeting with Strazzabosco.

70. At the meeting, Plaintiff requested that Strazzabosco to outline her job duties as an FOIA Officer.

71. Strazzabosco was unable to outline the job duties of a FOIA Officer.

6

72. Strazzabosco gave Plaintiff a directive that ordered her not to email Strazzabosco's superiors.

73. No similarly situated employee who was non-black and/or white was given this directive.

74. Strazzabosco chastised Plaintiff for not being available on Mondays.

75. Plaintiff was off on Mondays pursuant to FMLA leave.

76. On June 11, 2015, Strazzabosco sent a memorandum to Commissioner Andrew Mooney requesting a "permanent solution" to Plaintiff.

77. On June 23, 2015, Plaintiff received a termination letter from Commissioner Andrew Mooney.

78. The termination letter did not list the reasons for Plaintiff's termination.

79. Plaintiff's termination was motivated by her race.

80. Additionally and/or alternatively Plaintiff's termination was motivated by her sex.

81. As outlined above, Plaintiff's termination was because she was stereotyped as an angry black woman.

## COUNT I
## RACE DISCRIMINATION PURSUANT TO TITLE VII
## (Plaintiff Against Defendant City of Chicago)

82. Plaintiff hereby incorporates and re-alleges the above paragraphs as though fully alleged herein.

83. As stated above, on the basis of her race and at all relevant times, Plaintiff was a member of a protected class pursuant to Title VII.

84. As described above, Plaintiff was subjected materially adverse employment actions including, but not limited to, a demotion, increased discipline and scrutiny, and termination.

7

85. As described above, Plaintiff was subjected to these materially adverse employment actions because of her race.

86. Further, as described above, Plaintiff was subjected to harassment including, but not limited to, false allegations that resulted in her termination.

87. Defendant City of Chicago's conduct towards Plaintiff constitutes unlawful discrimination on the basis of Plaintiff's race under Title VII of the Civil Rights Act of 1964.

88. No other similarly situated employees were treated in the manner Plaintiff was.

89. Defendant City of Chicago, through its agents, took these materially adverse employment actions against Plaintiff.

90. As a result of the discrimination, Plaintiff has suffered damages including, but not limited to, monetary damages, mental stress, distress, and anguish.

WHEREFORE, Plaintiff demands compensatory and punitive damages, attorney's fees, and costs from Defendant City of Chicago.

## COUNT II
## SEX DISCRIMINATION PURSUANT TO TITLE VII
## (Plaintiff Against Defendant City of Chicago.

91. Plaintiff hereby incorporates and re-alleges the above paragraphs as though fully alleged herein.

92. As stated above, on the basis of her sex and at all relevant times, Plaintiff was a member of a protected class pursuant to Title VII.

93. As described above, Plaintiff was subjected materially adverse employment actions including, but not limited to, a demotion, increased discipline and scrutiny, and termination.

94. As described above, Plaintiff was subjected to these materially adverse employment actions because of her sex.

8

95. Further, as described above, Plaintiff was subjected to harassment including, but not limited to, false allegations that resulted in her termination.

96. Defendant City of Chicago's conduct towards Plaintiff constitutes unlawful discrimination on the basis of Plaintiff's sex under Title VII of the Civil Rights Act of 1964.

97. No other similarly situated employee was treated in the manner Plaintiff was.

98. Defendant City of Chicago, through its agents, took these materially adverse employment actions against Plaintiff.

99. As a result of the discrimination, Plaintiff has suffered damages including, but not limited to, loss of salary, mental stress, distress, and anguish.

WHEREFORE, Plaintiff demands compensatory and punitive damages, attorney's fees, and costs from Defendant City of Chicago.

## COUNT III
## RETALIATION PURSUANT TO TITLE VII
## (Plaintiff Against Defendant City of Chicago)

100. Plaintiff re-alleges the above paragraphs as though fully set forth herein.

101. As detailed above, Plaintiff engaged in protected activity pursuant to Title VII.

102. Specifically, Plaintiff engaged in protective activity when she filed a Complaint with the EEOC in December of 2014.

103. Defendant City of Chicago knew about Plaintiff's protected activity.

104. As detailed above, the Defendant City of Chicago undertook materially adverse employment action against Plaintiff, up to and including termination.

105. The Defendant City of Chicago's conduct towards Plaintiff constitutes unlawful retaliation under Title VII of the Civil Rights Acts of 1964.

106. The retaliatory actions alleged herein were the direct and proximate cause of the violation and the resulting injuries that Plaintiff sustained.

WHEREFORE, Plaintiff demands compensatory and punitive damages, attorney's fees, and costs from Defendant City of Chicago.

## JURY DEMAND

Plaintiff demands a trial by jury.

Respectfully submitted,

*s/ Blake Horwitz*
Attorney for the Plaintiff

**The Blake Horwitz Law Firm, Ltd.**
Blake Horwitz, Esq.
111 W. Washington St., Suite 1611
Chicago, IL 60602
Phone: (312) 676-2100
Fax: (312) 445-8741